UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Brenda Colvin,

    Plaintiff,

v.

Parker's Lake Apartments,

    Defendants.

NO. 19-cv-1045 (SRN/DTS)

**REPORT AND RECOMMENDATION**

---

Brenda Colvin, 15390 18th Avenue #1112, Plymouth, Minnesota 55447, *pro se* Plaintiff.

Brittany B. Skemp, Laurel J. Pugh, and Robin Ann Williams, Bassford Remele, 100 South Fifth Street, Suite 1500, Minneapolis, Minnesota 55402, for Defendant.

---

## INTRODUCTION

Plaintiff Brenda Colvin filed the present lawsuit against Parkers Lake Apartments,[1] alleging violations of the Fair Housing Act, 42 U.S.C. § 3601, *et seq.* Colvin now seeks a preliminary injunction to forestall eviction. Because Colvin has not demonstrated a likelihood of success on the merits of her fair housing claim, this Court recommends that Colvin's motion for a preliminary injunction be denied.

Colvin also moves for a hearing for a default judgment. For reasons discussed below, the Court recommends that motion be denied.

---

[1] The legal entities doing business as Parkers Lake Apartments are TPAF I Parkers Lake, LLC, and Timberland Parkers Lake, LLP. Answer to Pl.'s Final Am. Compl. 1, Docket No. 37. The Defendants have waived service and any defenses alleging improper service, and refer to themselves collectively as Parkers Lake. *Id.* For consistency, the Court shall do the same.

**FINDINGS OF FACT**

Colvin first applied for an apartment at Parkers Lake Apartments in March 2018. Decl. of Brittany B. Skemp Ex. 2 (Myss Decl.), at ¶ 3, Docket No. 39-1. Before applying, Colvin informed the manager at Parkers Lake that she had a prior eviction that she was expunging, and that she had credit concerns. *Id.* at ¶ 5. She applied for a unit with an eight-month lease and a rent of $1,636.00 per month.[2] *Id.* at ¶ 3. The unit Colvin originally applied for was deemed a "classic" unit, having not received updates that other units had. *Id.* Because the prior eviction still appeared on Colvin's rental records, Parkers Lake's tenant screening software recommended denying her rental application. *Id.* at ¶ 6.

Citing Colvin's circumstances, Parkers Lake's community manager referred the application to the regional manager for Timberland Partners, the management company for Parkers Lake, who in turn referred it to Timberland's regional vice president, Anika Yokanovich. *Id.* at Ex. 1 ¶¶ 2, 7; Ex. 2 ¶ 6. Yokanvich decided to reject Colvin's application because of the eviction action that still appeared on her record. *Id.* at Ex. 1 ¶ 7. It is unclear from the record whether Yokanovich knew that Colvin was in the process of expunging the eviction. Parkers Lake sent Colvin a rejection letter. *Id.* at Ex. 2 ¶ 7.

Following the successful expungement of her prior eviction, Colvin re-applied to Parkers Lake in May 2018. *Id.* at ¶ 8. At that time, Parkers Lake had two three-bedroom apartment units available: Units 1107 and 1112. *Id.* at ¶ 9. Unit 1107, which was available July 17, had its lowest rate at $2,048 for a 10-month lease. *Id.* Unit 1112, available June 3, had its lowest rate at $2,085 for either a 6-month or 9-month lease. *Id.* Unlike both the

---

[2] Parkers Lake uses a management software called Lease Rent Options which, among other things, generates rental rates for each currently available unit. Skemp Decl. Ex. 1 (Yokanovich Decl.) ¶ 3.

prior unit she had applied for and unit 1107, unit 1112 had been refurbished. *Id.* Colvin applied for Unit 1112 with the 9-month lease option and included with her application a copy of the order expunging the eviction, income verification, and a letter from a third-party agency indicating that it would provide short-term financial assistance. *Id.* at ¶¶ 9-11. Parkers Lake approved this new application and signed a lease agreement with Colvin. *Id.* at ¶ 11; Pl.'s Exs. pp. 12-13, Docket No. 18.[3]

In January 2019, Parkers Lake notified Colvin by letter that all future rent payments had to be in the form of a money order or cashier's check, or otherwise approved by Parkers Lake, claiming it did so because two of Colvin's rent checks were returned for insufficient funds.[4] Skemp Decl. Ex. 2, at ¶ 14; Am. Inj. Req. Ex. 1, at 4, Docket No. 20-1. Parkers Lak subsequently began eviction proceedings in Minnesota state court, contending that Colvin owed $7,502.67 in past-due rent, fees, and other charges. Skemp Decl. Ex. 1, at ¶ 8. On May 20, 2019, the state court entered judgment for Parkers Lake to recover the premises, but stayed issuing a Writ of Recovery of Premises until May 27. Skemp Decl. Ex. 3.

Around the same time that Parkers Lake began eviction proceedings, Colvin filed her first complaint in this action. Compl., Docket No. 1. While her application to proceed *in forma pauperis* was pending, she filed two amended complaints. Am. Compl., Docket No. 5; Final Am. Compl., Docket No. 6. Parkers Lake filed an Answer to the Final

---

[3] Because Colvin's exhibits in support of her motion are not individually marked, any pinpoint citations are to the page within the entire docket entry.

[4] In December 2018, Colvin filed an administrative complaint with the Department of Housing and Urban Development's Office of Fair Housing and Equal Opportunity, raising the same conduct at the heart of this complaint, as well as the inadequacy of Parkers Lake's response to maintenance requests. Pl.'s Exs. pp. 15-16.

Amended Complaint on May 20, 2019. Answer, Docket No. 15. After completing its review, the Court granted Colvin's IFP motion on June 4, 2019. Order, Docket No. 35.

## CONCLUSIONS OF LAW

### I. Motion for Preliminary Injunction

In its re-filed Answer, Parkers Lake indicates that Hennepin County issued a Writ of Recovery on June 5, 2019. Answer 1, Docket No. 37. Colvin asks the Court to enjoin Parkers Lake from executing the Writ, thus staying any eviction until her federal action concludes.[5] Because injunctive relief is an extraordinary remedy, the movant bears the burden of establishing its propriety. *Watkins, Inc. v. Lewis,* 346 F.3d 841, 844 (8th Cir. 2003). The propriety of a preliminary injunction turns on four factors: "(1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest." *Roudachevski v. All-American Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981)). Colvin has not shown that a preliminary injunction is warranted in this case.

---

[5] Colvin filed a motion to amend her motion for a preliminary injunction because the original motion was "not numbered according to Federal Rules of Civil Procedure." Docket No. 19. Because Colvin is pro se, the Court shall overlook this minor issue and a correction is unnecessary. The motion to amend is thus denied.

Colvin also filed a second motion for preliminary injunction on June 11, 2019 (Docket No. 42). Because the new motion apparently seeks the same relief—a stay of the eviction—the Court's analysis applies to both motions.

### A.     Threat of Irreparable Injury

This Court first examines Colvin's claim that she will face an irreparable injury without an injunction, as "the failure to show irreparable harm is, by itself, a sufficient ground upon which to deny a preliminary injunction." *Adam-Mellang v. Apartment Search, Inc.*, 96 F.3d 297, 299 (8th Cir. 1996). Colvin argues that eviction and the subsequent homelessness will cause her "continued emotional trauma," and all but guarantees that her children will not be returned to her. Am. Inj. Req. 3-5, Docket No. 20.[6]

Colvin has demonstrated that an irreparable injury is likely if an injunction does not issue. Deprivation of housing may constitute an irreparable harm. *Higbee v. Starr*, 698 F.2d 945, 947 (8th Cir. 1983) (per curiam); *see also Hruby v. Larsen*, Civ. No. 05-894 (DSD/SRN), 2005 WL 1540130, at *4 (D. Minn. June 30, 2005) (finding irreparable harm where record suggested that an eviction would leave movant without "sufficient, affordable housing"). *But see Fed. Home Loan Mortg. Corp.*, Civ. No. 23-692 (SRN/JSM), 2012 WL 1901304, at *4 (D. Minn. May 25, 2012) (finding no irreparable injury where movant did not show that eviction could not be adequately compensated through an award of damages). It is undisputed that Colvin currently lives in the apartment unit, as did her children before they were removed.[7] Further, Colvin's current eviction for

---

[6] Although listed on the docket as a "Letter to Magistrate Judge," Docket No. 20 contains Colvin's argument in support of her preliminary injunction motion.

[7] Colvin suggests, both in her Final Amended Complaint and in subsequent filings, that Parkers Lake may be at least partly responsible for her children being removed from her home. Colvin has a separate lawsuit in this District addressing her children's removal. In that case, Colvin alleges that the children were removed during a welfare check by the Plymouth police department after Colvin was taken into custody by the Minneapolis Police Department on criminal charges. Compl. at ¶¶ 6-10, *Colvin v. Plymouth Police Dept.*, Case No. 19-cv-883 (DSD/BRT). It is unclear what role Parkers Lake played in

5

ostensibly failing to pay rent casts serious doubt upon her ability to find sufficient, affordable hosing if she is evicted. Therefore, the Court finds irreparable injury is likely if the injunction does not issue.

### B.     Likelihood of Success on the Merits

To receive an injunction at this point in the litigation, Colvin must also demonstrate that her case is likely to succeed on the merits. *See Minn. Vikings Football Stadium, LLC v. Wells Fargo Bank*, 157 F. Supp. 3d 834, 841 (D. Minn. 2016) (identifying the movant's likelihood of success as "the most important of the four *Dataphase* factors"). Without at least a chance of success on the merits, an injunction cannot issue. *Mid-Am. Real Estate Co. v. Iowa Realty Co.*, 406 F.3d 969, 972 (8th Cir. 2005). On the record before it, the Court cannot find that Colvin has demonstrated any chance of succeeding on the merits of her claim.

At bottom, Colvin alleges Parkers Lake treated her less favorably because of her race or familial status, both by requiring her to pay more for an apartment unit, and by ignoring maintenance requests or blaming those repair needs on her children.[8] In this Circuit, courts test FHA disparate treatment claims "under the same framework as Title VII disparate-treatment claims." *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010). Such a claim requires proof of discriminatory purpose, either through direct evidence or "indirect evidence creating an inference of discriminatory intent under the *McDonnell*

---

this welfare check. Regardless, the Court need not address these allegations as they are unrelated to the Fair Housing Act claim at issue in this case.

[8] The Final Amended Complaint also alleges disparate treatment because of Colvin's receipt of public assistance, but public aid recipients are not a protected class under the Fair Housing Act. 42 U.S.C. § 3604.

*Douglas* burden-shifting framework." *Id.* (citations omitted). A plaintiff proceeding on indirect evidence of discrimination must make a prima facie showing. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Colvin has not shown any likelihood of success on her FHA claim. There is no direct evidence of discrimination in this record. And Colvin has not made a prima facie showing based on any indirect evidence. To the contrary, the documents submitted by Colvin herself (and declarations from Parkers Lake employees) strongly support Parkers Lake's contention that Colvin's initial application was denied because of the not-yet-expunged eviction on her records, which is unrelated to either her race or familial status. Pl.'s Exs. pp. 8, 11; Skemp Decl. Ex. 1, at ¶ 7. Otherwise, there is no evidence in the record before this Court that Parkers Lake treated otherwise similarly situated people not in the same protected classes as Colvin differently than it treated her. There is no evidence that the eviction action on her record was a mere pretext for the denial of her first application. There is no evidence that the higher rent for the second unit she applied for was the result of anything other than that unit being refurbished, for a different lease length, and available at a time when demand for units is higher. And there is no evidence that any issues Colvin had with her appliances—which the record suggests Parkers Lake attempted to address—were purposely ignored because of Colvin's race or familial status or in retaliation of her filing an FHA complaint with HUD.[9] Without direct or indirect evidence of disparate treatment, Colvin cannot succeed on the merits of her claim. She may believe that Parkers Lake has discriminated against her, and she may make such a

---

[9] Colvin's administrative complaint included the very conduct she claims was done in retaliation for filing that claim. Pl.'s Exs. pp. 15-16.

7

showing as this litigation progresses, but she has not presently alleged any facts demonstrating a likelihood of success on her claim.

This Court need not proceed to analyze whether the balance of harms or the public interest favor an injunction because Colvin has not demonstrated any chance of success on the merits of her underlying claim. Even if the remaining factors heavily favored a preliminary injunction, that relief is inappropriate without a chance of success on the merits. *Mid-Am. Real Estate*, 406 F.3d at 972.

### II.   Motion to Schedule Hearing of Default Judgment

On May 29, Colvin filed a motion to schedule a hearing of default judgment, asserting Parkers Like "did not respond to the 'final amended complaint' within 21 days." Mot. Hr'g Default J., Docket No. 31. The motion is denied. Colvin's Final Amended Complaint was both signed and filed on May 7, 2019. Final Am. Compl. 1, 13. A signed Proof of Service was filed the same day. Docket No. 8. On May 20, 13 days after being served, Parkers Lake filed an Answer (Docket No. 15), as well as an Affidavit of Service (Docket No. 16). Although the Affidavit of Service referred to "Plaintiff's Second Amended Complaint," there is no doubt that the Answer was to the Final Amended Complaint. Parkers Lake timely responded and no hearing for a default judgment is necessary.

### RECOMMENDAITON

For the reasons stated on the record, the Court RECOMMENDS THAT:

1.   Colvin's Motion for Preliminary Injunction [Docket No. 17] be DENIED.

2.   Colvin's Motion to Amend the Motion for Preliminary Injunction [Docket No. 19] be DENIED.

3. Colvin's Motion to Schedule a Hearing of Default Judgment [Docket No. 31] be DENIED.

4. Colvin's Motion for an Order of Injunction [Docket No. 42] be DENIED.


Dated: June 14, 2019

                                      s/ David T. Schultz
                                      DAVID T. SCHULTZ
                                      United States Magistrate Judge


## **NOTICE**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation. A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set for in LR 72.2(c).