UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Brenda Calloway Colvin,<br><br>Plaintiff,<br><br>v.<br><br>Parker's Lake Apartments,[1]<br><br>Defendants. | Case No. 0:19-cv-1045-SRN-DTS<br><br>**ORDER ADOPTING REPORT AND RECOMMENDATION** |

Brenda Calloway Colvin, 15390 18th Avenue, #1112, Plymouth, MN 55447, pro se.

Brittany B. Skemp, Laurel J. Pugh, and Robin Ann Williams, Bassford Remele, 100 S. 5th St., Ste. 1500, Minneapolis, MN 55402, for Defendant.

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Plaintiff Brenda Calloway Colvin's Objections [Doc. No. 53] to the Report and Recommendation ("R&R" [Doc. No. 52]) of Magistrate Judge David T. Schultz dated June 11, 2019. In the R&R, the magistrate judge recommended the denial of: (1) Plaintiff's motions for injunctive relief [Doc. Nos. 17 & 42]; (2) her Motion to Amend the Motion for Preliminary Injunction [Doc. No. 19]; and (3) her Motion to Schedule a Hearing of Default Judgment [Doc. No. 31]. For the reasons set forth below, the Court overrules Plaintiff's Objections and adopts the R&R.

---

[1] As noted in the June 11, 2019 Report and Recommendation, the legal entities doing business as Parkers Lake Apartments are TPAF I Parkers Lake, LLC, and Timberland Parkers Lake, LLP. (R&R [Doc. No. 52] at 1 n.1.) Defendants refer to themselves collectively as "Parkers Lake." (*Id.*)

## I. BACKGROUND

Plaintiff Brenda Colvin first applied for an apartment at Parkers Lake Apartments ("Parkers Lake") in March 2018. (R&R at 2[2].) Prior to applying, Colvin informed the Parkers Lake manager that she had credit concerns and was attempting to expunge a prior eviction. (*Id.*) She applied for a "classic," non-updated apartment unit with an eight-month lease for $1,636.00 per month. (*Id.*) Because the prior eviction appeared on Colvin's housing records, the automated tenant screening software used by Parkers Lake recommended denying her rental application. In light of Colvin's circumstances, however, the apartment's community manager referred Colvin's application to the apartment's management company, Timberland Partners, for additional consideration. (*Id.*) Anika Yokanovich, the regional vice president of Timberland Partners, reviewed the application and denied it due to the eviction action that still appeared in Colvin's housing background. (*Id.*)

In May 2018, after Colvin had successfully expunged her prior eviction, she reapplied to Parkers Lake. (*Id.*) At that time, two three-bedroom apartments were available: Units 1107 and 1112. (*Id.*) Unit 1107 was available in July 2018 for a ten-month lease of $2,048 per month, and Unit 1112 was available sooner, in June 2018, for a six-month or nine-month lease of $2,085 per month. (*Id.*) Additionally, Unit 1112 had been refurbished, unlike the prior unit for which Colvin had applied and Unit 1107,. (*Id.*

---

[2] Citations to the record are found in the R&R.

at 3.) Parkers Lake approved Colvin's application for Unit 1112, with a nine-month lease, and signed a lease agreement. (*Id.*)

During the period of June 2018 through at least January 2019, Plaintiff reported problems with the refrigerator in her unit. (Skemp Decl., Ex. 2 (Myss Decl.) ¶ 12 [Doc. No. 39-1].) Defendants' records reflect that they responded to her complaints. (*Id.*) In December 2018, Colvin filed an administrative complaint with the Department of Housing and Urban Development ("HUD") concerning much of the conduct at issue here, including the alleged inadequacy of Parkers Lake's response to maintenance requests. (R&R at 3 n.4.) Eventually, Defendants replaced the refrigerator in March 2019, after a police officer who had been in Plaintiff's apartment contacted the Parkers Lake management office, expressing concern about children in the unit who were without a functioning refrigerator. (Skemp Decl., Ex. 2 (Myss Decl. ¶ 12).)

In January 2019, Parkers Lake required Colvin to pay all future rent with a money order or cashier's check, or a form otherwise approved by Parkers Lake, stating that two of Colvin's rent checks had been returned for insufficient funds. (*Id.* ¶ 14.) Parkers Lake subsequently commenced eviction proceedings against Colvin in Minnesota state court, asserting that she owed $7,502.67 in past-due rent, fees, and other charges. (R&R at 3.) On May 20, 2019, the state court entered judgment for Parkers Lake, but stayed the issuance of a Writ of Recovery of Premises until May 27, 2019. (*Id.*) In Defendants' June 7, 2019 memorandum in opposition to Plaintiff's motions for injunctive relief, they stated that they "may order the writ from the court as early as May 28, 2019." (Defs.' Opp'n at 7 [Doc. No. 38].)

3

As eviction proceedings were underway, Colvin filed the instant suit on April 16, 2019. She alleges violations of the Fair Housing Act, 42 U.S.C. § 3601, generally asserting that she received disparate treatment due to race and familial status. (Second Am. Compl. ¶¶ 3, 14–17 [Doc. No. 6].) She then filed the motions for injunctive relief at issue here.

The magistrate judge found that although Colvin sufficiently demonstrated the threat of irreparable harm absent the issuance of an injunction, she failed to show that she was likely to succeed on the merits of her Fair Housing Act disparate treatment claim. (R&R at 5–6.) Also, Magistrate Judge Schultz recommended that Colvin's motion to schedule a hearing on default judgment be denied, finding that Defendants had, in fact, responded to Plaintiff's final amended pleading. (*Id.* at 8.) As to Plaintiff's Motion to Amend the Motion for Preliminary Injunction in order to include numbering to comply with the Rules of Civil Procedure, the magistrate judge found this to be a minor issue for which correction was unnecessary, and denied the motion. (*Id.* at 4 n.5.)

Colvin filed her objections to the R&R in a timely manner. She lodges the following objections to the magistrate judge's recommendation on her motions for injunctive relief: (1) Magistrate Judge Schultz failed to consider alternative forms of relief in lieu of eviction, and her apartment was paid with public funds, (*see* Objs. at 9, 12); (2) the magistrate judge failed to consider her mental illness, (*id.* at 8, 10); and (3) the magistrate judge failed to consider the refrigerator repair timeline.[3] (*Id.* at 12.)

---

[3] Because Colvin does not appear to object to the magistrate judge's recommendations regarding her other motions, i.e., her Motion to Amend the Motion for Preliminary Injunction and Motion to Schedule a Hearing of Default Judgment, the Court does not

4

On June 24, 2019, Defendants filed a response to Plaintiff's objections, urging the Court to adopt the R&R, and indicating their intent to execute the Writ of Recovery of Premises at 9:00 a.m. on June 27, 2019. (Defs.' Opp'n at 1.) On June 27, 2019, at 8:57 a.m., Plaintiff notified the Court by phone that her eviction was in progress.[4]

## II. DISCUSSION

The district court must conduct a de novo review of a magistrate judge's report and recommendation on dispositive motions to which specific objections have been made. Fed. R. Civ. P. 72(b); D. Minn. L.R. 72.2(b). Plaintiff's motions for injunctive relief are dispositive and must be reviewed under this standard. D. Minn. L.R. 7.1(c)(6)(A).

### A. Objection: Failure to Consider Alternative Forms of Relief

Colvin argues that the magistrate judge should have considered alternative forms of relief, such as a payment plan, and that the apartment in question was "paid for by public funds, as secured with the hope of establishing stable housing for the Plaintiff and her Children, and other families, in compliance [with] Fair Housing laws after being homeless." (Pl.'s Objs. at 12.)

While the Court appreciates Plaintiff's interest in resolving her dispute other than through eviction, the magistrate judge applied the correct legal standard to Plaintiff's motions for injunctive relief. (R&R at 4.) The Court first observes that a preliminary

---

address them in any detail. Rather, the Court agrees with the magistrate judge and adopts his recommendations as to these two motions.

[4] While Defendants served their response to Plaintiff's Objection by mail on June 24, 2019, (*See* Defs.' Certificate of Service [Doc. No. 58]), it appears that Plaintiff had not received the response at the time eviction commenced.

5

injunction "is an extraordinary remedy never awarded as a matter of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To determine if Plaintiff is entitled to a preliminary injunction, she must establish the following factors in her favor: (1) the likelihood of success on the merits of her claims; (2) the threat of irreparable harm to Plaintiff; (3) the balance between that threat of harm and the injury that granting injunctive relief would inflict on other interested parties; and (4) whether the issuance of a preliminary injunction is in the public interest. *See Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 n.1 (8th Cir. 1981). These elements do not include consideration of other means of conflict resolution. The Court finds that the magistrate judge properly considered these factors.

As to Plaintiff's objection that the magistrate judge should have considered the policies behind the Fair Housing Act, this arguably implicates the fourth factor listed above—whether the issuance of a preliminary injunction is in the public interest. While the magistrate judge did not consider this factor, it was not necessary for him to do so, for the reasons discussed below. However, even if he had, consideration of this factor would not lead to a different result. Just as tenants have an important public policy interest in fair housing practices, landlords have an important public policy interest in the enforcement of leases and housing orders. The Court finds that here, this factor is neutral, and does not favor either party.

**B. Objection: Failure to Consider Plaintiff's Mental Health**

Plaintiff asserts that the magistrate judge should have accounted for certain events that appear to form the basis for another lawsuit that she has filed in this District. (Objs. at

6

12.) The other case involves the removal of Plaintiff's children from the home and Plaintiff's interactions with the Plymouth Police Department. *See generally, Colvin v. Plymouth Police Department*, 19-cv-883 (DSD/BRT). Colvin notes a history of panic attacks and anxiety, and argues that the removal of her children from the home contributed to her PTSD and depressive symptoms. (Objs. at 8, 12.) She states that she was diagnosed with PTSD on April 13, 2019. (*Id.* at 8.)

To the extent that Colvin argues that the magistrate judge should have considered damage to her mental health as part of the *Dataphase* irreparable harm analysis, the objection is essentially moot because Magistrate Judge Schultz found that Colvin had satisfied this factor (albeit with eviction constituting the irreparable harm). (R&R at 5–8.)

To the extent that Colvin argues that discrimination based on mental health disability should have been considered in the magistrate judge's evaluation of her likelihood of success on the merits—the first *Dataphase* factor noted above—the Court disagrees. Plaintiff bases her Fair Housing Act claim on race and familial status discrimination. (Second Am. Compl. ¶¶ 3, 14–17.) While her complaint refers to the "mental and emotional breakdown" of her health, (*id.* ¶ 23), and the fact that she had a therapy dog, (*id.* ¶ 19), she does not allege that Defendants discriminated against her because of a mental disability. Rather, she only raises the issue of disability discrimination in her Objections. (Objs. at 10) (stating, "It is obvious that the Plaintiff is not allowed to ask for leasing changes, or other simplicities in the areas of housing, or any civil right compliancy solution with a basis of having a mental illness, and a lack of education.")

7

Magistrate Judge Schultz properly evaluated Colvin's claim of disparate treatment based on race and familial status. (*See* R&R at 6–7.) He noted that Fair Housing Act disparate treatment claims are evaluated under the same framework as Title VII disparate treatment claims. *Gallagher v. Magner*, 619 F.3d 823, 831 (8th Cir. 2010). He found no direct evidence of discrimination, and under the burden-shifting standards of a disparate treatment claim, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), he found that Plaintiff failed to meet the elements of a prima facie case of race discrimination. (R&R at 7.) Rather, the current record demonstrates that Defendants initially refused to rent to Plaintiff due to her eviction record. (*Id.*) Once her record was expunged, Defendants rented an apartment to her, and there is no evidence that they treated otherwise similarly situated people, not in the same protected class as Colvin, differently. (*Id.*) Nor is there currently evidence that the higher rent that she ultimately paid resulted from anything other than a refurbished unit, available at a later time. (*Id.*) Furthermore, there is no evidence that Defendants treated her differently with respect to her refrigerator complaints or in retaliation for filing an administrative complaint with HUD. (*Id.*) As the magistrate judge observed, it may be the case that Ms. Colvin can make a showing of discrimination as this case progresses, but she has not presently demonstrated a likelihood of success on the merits.

The Eighth Circuit has stated that "an injunction cannot issue if there is no chance of success on the merits." *Mid-Am. Real Estate Co. v. Ia. Realty Co., Inc.*, 406 F.3d 969, 972 (8th Cir. 2005) (citing *Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 589 (1984) (O'Connor, J., concurring); *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d

796, 804 (7th Cir. 2002)). Because Plaintiff has not shown a likelihood of success on the merits of her Fair Housing Act claim, the Court need not address the remaining *Dataphase* factors. Having failed to demonstrate a likelihood of success on the merits, Plaintiff is not entitled to injunctive relief.

### C. Objection: Failure to Consider Defendants' Timeline of Repairs

Plaintiff also argues that Magistrate Judge Schultz failed to consider the appliance repair timeline as it relates to a supply of groceries. (Objs. at 12.) This appears to relate to Plaintiff's other lawsuit involving the removal of her children from the home, rather than the instant lawsuit. In any event, in Magistrate Judge Schultz's discussion of the likelihood of Plaintiff's success, he noted her claim of discrimination based on the alleged actions of Parkers Lake in "ignoring maintenance requests." (R&R at 6–7.) The Court finds that the magistrate judge properly considered this issue. And based on the current record, there is no evidence that Defendants ignored Plaintiff's maintenance requests due to her race or familial status or in retaliation for filing the Fair Housing Act complaint with HUD. Accordingly, because Colvin has not demonstrated the likelihood of success on the merits, her motions for injunctive relief are denied.

## III. ORDER

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Objection to Magistrate's Judge Schultz's Report and Recommendation [Doc. No. 53] is **OVERRULED**.

2. Magistrate Judge Schultz's Report and Recommendation [Doc. No. 52] is **ADOPTED**.

3. Plaintiff's Motion for a Preliminary Injunction [Doc. No. 17] is **DENIED**.

4. Plaintiff's Motion to Amend the Motion for a Preliminary Injunction [Doc. No. 19] is **DENIED**.

5. Plaintiff's Motion to Schedule a Hearing of Default Judgment [Doc. No. 31] is **DENIED**.

6. Plaintiff's Motion for an Order of Injunction [Doc. No. 42] is **DENIED**.

Dated:  June 28, 2019                                s/Susan Richard Nelson
                                                     SUSAN RICHARD NELSON
                                                     United States District Judge